1                    UNITED STATES DISTRICT COURT
                      DISTRICT OF MASSACHUSETTS
2

3

4    UNITED STATES OF AMERICA,          )
                                        )
5                                       )
                                        )
6    vs.                                )  No. 1:09-cr-10382-DPW-1
                                        )
7                                       )
     ALBERT GONZALEZ,                   )
8                                       )
                      Defendant.        )
9


10
     BEFORE:  THE HONORABLE DOUGLAS P. WOODLOCK
11

12
                     PLEA AND MOTION HEARING
13

14

15
            John Joseph Moakley United States Courthouse
16                      Courtroom No. 1
                        One Courthouse Way
17                      Boston, MA 02210
                   Tuesday, December 29, 2009
18                        2:05 p.m.

19

20

21             Brenda K. Hancock, RMR, CRR
                   Official Court Reporter
22       John Joseph Moakley United States Courthouse
                      One Courthouse Way
23                    Boston, MA 02210
                      (617)439-3214
24

25

1    APPEARANCES:

2         UNITED STATES ATTORNEY'S OFFICE
          By:  STEPHEN P. HEYMANN, AUSA
3              DONALD L. CABELL, AUSA
          1 COURTHOUSE WAY
4         BOSTON, MA 02210
          On behalf of the United States of America
5
          MARTIN G. WEINBERG, PC
6         By:  MARTIN G. WEINBERG, ESQ
          20 PARK PLAZA, SUITE 1000
7         BOSTON, MA 02116
          On behalf of the Defendant.
8

9         K&L GATES LLP
          By: MICHAEL D. RICCIUTI, ESQ.
10        ONE LINCOLN STREET
          STATE STREET FINANCIAL CENTER
11        BOSTON, MA 02111-2950
          On behalf of Interested Party Company A
12

13

14

15

16

17

18

19

20

21

22

23

24

25

1              (The following proceedings were held in open court

2       before the Honorable Douglas P. Woodlock, United States

3       District Judge, United States District Court, District of

4       Massachusetts, at the John J. Moakley United States Courthouse,

5       One Courthouse Way, Courtroom 1, Boston, Massachusetts, on

6       Tuesday, December 29, 2009):

7              THE CLERK:  All rise.

8       (The Honorable Court entered the courtroom at 2:05 p.m.)

9              THE CLERK:  You may be seated.  This is the matter of

10      the United States versus Albert Gonzalez, Criminal Action

11      09-10382.

12             THE COURT:  Well, the principal purpose, obviously, is

13      to conduct a Rule 11 hearing, but there are a couple of

14      ancillary matters that have arisen.

15             One, I am made aware of some sort of

16      diminished-capacity claim that is being made, I guess, in

17      mitigation of sentencing.

18             But, Mr. Weinberg, does it, in any event, affect his

19      ability to plead here?

20             MR. WEINBERG:  It does not, your Honor.  There is no

21      relationship between the sentencing defense and the 5K2.13

22      position that was presented to Judge Saris and Mr. Gonzalez's

23      rationality, his understanding, his capacity to communicate

24      with counsel and a voluntary and intelligent plea to these

25      charges, your Honor.

1              THE COURT:  All right.  The second is, that I have

2    received a modification of the plea agreement here in respect

3    of the Waiver of Appeal and Collateral Attack.  While it has

4    been my experience that waivers of appeal and waivers of

5    collateral attack are not generally matters that I find knowing

6    and voluntary, the development of this case suggests to me that

7    this may be one of the very few exceptions that I have

8    recognized there.  So, I note it, and I will inquire of the

9    defendant with respect to it.

10             Now, in addition, I have several different motions

11   here concerning what I will call themes and variations on the

12   Victim/Witness Act, and, in particular, motions to seal.  I

13   have from the Government a request that sealing continue until

14   January 5th.

15             Mr. Cabell or Mr. Heymann, what's the magic of January

16   5th?

17             MR. HEYMANN:  There is no magic to it, your Honor.  As

18   the Court knows, Rule 7.2 requires a date be put.  The purpose

19   was to give what had been identified in the indictment as

20   Company A and Company B a period of time in which to make a

21   submission to the Court, that that would be a closed-end period

22   of time, that January 5th was simply the closed end, at which

23   point the Court could determine whether or not it was

24   appropriate to continue the sealing of the matters or allow it

25   to elapse and unseal.  Or, I guess, a third possibility is to

1    enter an order with respect to the motions.

2         THE COURT:  I have a submission with respect to

3    Company A.  With respect to Company B, do you have any

4    understanding of their position?

5         MR. HEYMANN:  I do not, your Honor.  I spoke to

6    Company B's attorney this afternoon.  I told him at that time

7    that I did not anticipate that it would be resolved today, that

8    the motion gave him until January 5th in order to make his

9    decision and make a submission.  And he said to me at the time

10   he was going to go back after our discussion of the merits on

11   both sides, speak to his client, and make a determination of

12   whether to make a filing, and if he made a filing he would do

13   it by January 5th.

14        THE COURT:  Now, you have made a filing, or the

15   Government made a filing itself, in opposition, ultimately, to

16   the Motion to Seal --

17        MR. HEYMANN:  Yes, your Honor.

18        THE COURT:  -- with respect to these two entities.  Do

19   you have any objection to Company A being permitted to

20   intervene in this matter?

21        MR. HEYMANN:  No, your Honor.  As indicated in our

22   response, which I know was just filed this morning, we have no

23   objection to the intervention for the purpose of airing out

24   this issue.  They have asked solely for the purpose of airing

25   out this particular issue.  We have no objection to it, and

1    should Company B seek to intervene for the purpose of airing it

2    out, we have no objection to its airing it out.  It's the

3    relief they seek to which we have an objection.

4         THE COURT:  Well, there is a kind of lag time that is

5    related here.  Company A got its opposition in promptly -- or

6    its concerns expressed promptly; Company B has not yet done

7    that, and I am loath to make a distinction between the two.

8         So, I think I will simply allow Company A to intervene

9    and take up the merits of the question of disclosure of the two

10   when the time period has run, unless the Government or -- and I

11   understand there is a representative of Company A here -- wish

12   to be heard in oral argument with respect to it.

13        MR. HEYMANN:  We have no objection to the Court's

14   plan.  We also don't anticipate that -- you know, it's hard

15   without seeing what Company B's submission would be, but the

16   nature of our submission is such that I would expect that it

17   will be the sole submission of the Government addressing the

18   issue.

19        THE COURT:  Okay.  Now, there is someone here from

20   Company --

21        I am sorry, Mr. Weinberg.  Did you want to add

22   something?

23        MR. WEINBERG:  No.  I just wanted to be clear.

24   Mr. Gonzalez has no position, understands who Companies A and B

25   are.  There is no notice burdens, and the Rule 11 can proceed

1    with an intelligent plea based on his subjective knowledge of

2    Companies A and B.

3             THE COURT:  All right.  Now, I was told that there is

4    someone here from Company A to speak on behalf of Company A

5    here.

6             MR. RICCIUTI:  Michael Ricciuti, from K&L Gates.

7             THE COURT:  Mr. Ricciuti, do you have any objection to

8    my ruling on this, on the papers, once the January 5th deadline

9    has run, or do you wish to be heard?

10            MR. RICCIUTI:  I would wish to be heard, your Honor,

11   but I think your plan makes sense, to hear from Company B, give

12   the Court time to review the papers.  If the Court finds

13   argument helpful, we, of course, think it would be helpful, but

14   I leave it to the Court's discretion, your Honor.  We think it

15   would be useful, but if the Court does not think so, we

16   wouldn't press it.

17            THE COURT:  Okay.  Well, I will look at the papers and

18   see whether or not it is necessary.

19            Let me ask one other question, not of you,

20   Mr. Ricciuti, but of you, Mr. Heymann.

21            The identification of the co-defendants, Hacker 1 and

22   Hacker 2; have their names been disclosed at this point

23   publicly?

24            MR. HEYMANN:  I believe the defendant is fully aware

25   of who Hacker 1 and Hacker 2 are.  If there's any issue of

1    that --

2              Is there any issue?

3              MR. WEINBERG:  No.

4              MR. HEYMANN:  There is no issue with that, your Honor.

5              THE COURT:  And with respect to the use of "Hacker 1"

6    and "Hacker 2" as names there, have they been arraigned?  What

7    is the story?

8              MR. HEYMANN:  They remain fugitives, your Honor.

9              THE COURT:  All right.  Will they be identified,

10   however, by name during the course of the Rule 11?

11             MR. HEYMANN:  In the course of this proceeding, no,

12   your Honor.

13             THE COURT:  Okay.  Just a moment.  That is fine.  That

14   is the court artist.

15             All right.  Now, let me get to a secondary issue in

16   this case, and that has to do with the relationship to Judge

17   Saris's cases.

18             As you know, we have a very strong rule about random

19   assignment of criminal cases, and, as a consequence, this case

20   was separately assigned to me, although Judge Saris has the

21   other cases, and I know the parties sought consolidation.  I

22   think it is fair to say that the circumstances are such that

23   the Court is going to have to revisit, as a general matter, the

24   Court, itself, its random assignment for matters such as this

25   being brought in from other Districts.  But until that happens,

1    I have a separate responsibility here.

2         My view, however, would be this:  That I would not be

3    involved in sentencing until after Judge Saris has done the

4    sentencing in the case, and while, obviously, I will give the

5    most careful deference to what Judge Saris does, I am going to

6    and must act independently in this matter, and that is

7    anticipated, I think, by the waiver document that was submitted

8    here.

9         Now, in terms of just simple timing, anticipating that

10   there is some period of time that is going to be deferred for

11   sentencing, do the parties have any objection to that --

12   deferred for Judge Saris -- any objection to my waiting until

13   Judge Saris has completed her sentencing?

14        MR. WEINBERG:  No, your Honor.

15        MR. HEYMANN:  No, your Honor, and I think, as a

16   practical matter, in the normal course of things it would.

17   Judge Saris's -- the sentencing in the two matters before Judge

18   Saris are scheduled for March 18th.  I don't recall, as I stand

19   here, what the time is, but on March 18th.  And that would be

20   inside the framework that the Court would normally permit for

21   the pretrial -- for the presentencing materials to be prepared.

22        The ancillary matter to which the Court referred to

23   earlier of the question of whether or not the Government should

24   have an opportunity for an independent psychological evaluation

25   may affect the timing of that sentencing.  But there is no

1  reason that this Court's sentencing shouldn't take place after

2  Judge Saris's sentencing, and, if necessary, we could --

3       THE COURT:  Do you anticipate it is going to change

4  the timing for Judge Saris's?  I understand there is a March

5  18th date, you tell me.  Are all of the necessary materials

6  likely to have been developed by then?

7       MR. HEYMANN:  We are very, very early along in that

8  decision-making process.  It, frankly, only came up in the last

9  few days -- about two weeks ago.  So, we are in the process of

10  evolving what materials we will be given access to by the

11  defendant; in turn, what additional materials Judge Saris may

12  need to make a decision.  She initially denied the Government's

13  right to have an independent psychological evaluation but did

14  it without prejudice to reconsidering it, when the Government

15  specified what questions it would likely be asking.

16       So, it's all very early along, and it's hard to

17  anticipate right now exactly what the answer is.  But, no, I

18  would not expect it would be delayed, and if it were delayed, I

19  would not expect it to be delayed long.

20       THE COURT:  Well, again, I think my view is that I

21  would be following along in the path that Judge Saris has set

22  out, at least procedurally.  Substantively, I will have to make

23  my own determination about the impact of these materials, and I

24  think what I would do is simply set an instrumental date for

25  sentencing, with the understanding that it will be rescheduled

1  to accommodate the parties, and I would assume that it would be

2  done in relative proximity, if not the same day, a day later

3  there, to save the parties some time on this.

4      Is that agreeable?

5      MR. WEINBERG:  Yes, your Honor.  In fact, we were

6  going to request March 19, which is the day immediately

7  following the March 18 sentencing hearing before Judge Saris,

8  so that Mr. Gonzalez's family and friends, who would be coming

9  from the South Florida area, would be able to make one rather

10  than multiple trips.

11      THE COURT:  Okay.  Well, I will set that date; that

12  is, if Mr. Lovett will let me set that date.

13      (Court conferring with the Clerk)

14      THE COURT:  Why don't we set it at 2:30 on the 18th?

15      MR. WEINBERG:  Thank you, Judge.

16      MR. HEYMANN:  Your Honor, on the 19th, you mean?

17      THE COURT:  19th, I am sorry.  We will set it at 2:30

18  on the 19th, on the assumption that that may well be subject to

19  some change here.

20      So, let me, then, just deal briefly with the motions

21  that I think are before me.  First, I allow the Motion to

22  Intervene of Company A, and I reserve on the question of the

23  relief sought as to continued protective order and sealing.

24      I allow the limited Motion to Seal by the Government,

25  which is number 6, the Motion of Company A's number 9, awaiting

1    the possibility of further submissions by Company B.

2         I also allow number 13, which is another limited

3    Motion to Seal with respect to the identity of Company A and

4    Company B.

5         And, finally, does anyone want to be heard on the

6    question of the alternative notice procedures for victims?

7         Is that, by the way, what Judge Saris has done?

8         MR. HEYMANN:  Yes, your Honor.  As I stand here, I

9    can't recall whether -- it was filed simultaneously in all of

10   the Courts as they have come up with various matters.  In a

11   number of them it's been granted.  I can't remember whether

12   it's been ruled on in all Courts, but in all courts considering

13   it, it has been granted.

14        THE COURT:  Okay.  Any objection from --

15        MR. WEINBERG:  No, your Honor.

16        THE COURT:  And, Mr. Ricciuti, I guess you are an

17   intervenor, so you can express a view.

18        MR. RICCIUTI:  I have no position on it.  Thank you.

19        THE COURT:  All right.  So, that will be allowed.

20   That is number 8.

21        So, unless there are further matters that we need to

22   take up, I will move to the question of the change of plea

23   here, and I will ask Mr. Lovett to swear Mr. Gonzalez.

24            ALBERT GONZALEZ, DULY SWORN BY THE CLERK

25        THE COURT:  You may be seated, Mr. Gonzalez.

1          The purpose of this hearing is to satisfy me that what

2     appears to be your intention to plead guilty to two very

3     serious federal felonies is a knowing and voluntary act on your

4     part, and in order for me to make that kind of determination, I

5     have to ask you some questions.  Some of those questions are

6     personal in nature.  You will understand that I am not trying

7     to delve into your personal life, except as it makes it

8     possible for me to determine whether or not you know what you

9     are doing and what you are doing is voluntary.

10         Do you understand?

11         THE DEFENDANT:  Yes, your Honor.

12         THE COURT:  Can you tell me how old a man you are?

13         THE DEFENDANT:  Twenty-eight years old.

14         THE COURT:  How far did you get in school?

15         THE DEFENDANT:  Some high school.

16         THE COURT:  Some high school?

17         THE DEFENDANT:  I apologize.  Some college.  Completed

18    high school.

19         THE COURT:  And how much college?

20         THE DEFENDANT:  A couple of months.

21         THE COURT:  What kinds of college courses were you

22    taking?

23         THE DEFENDANT:  The core credits.  I never advanced.

24         THE COURT:  Just basic college courses?

25         THE DEFENDANT:  That's correct.

1          THE COURT:  And what have you been doing for a living

2     for the past, say, five years?

3          THE DEFENDANT:  I have been doing consulting.

4          THE COURT:  In what area?

5          THE DEFENDANT:  In computer security.

6          THE COURT:  Have you had any difficulty understanding

7     what this case is about, what it is that the Government is

8     accusing you of?

9          THE DEFENDANT:  No, your Honor.

10          THE COURT:  Have you had an adequate opportunity to

11     discuss this case, the defenses, and the various initiatives

12     available to you with your attorney, Mr. Weinberg?

13          THE DEFENDANT:  Yes, your Honor.

14          THE COURT:  Are you satisfied you have received from

15     him the kind of legal advice that you need to make your own

16     decision about whether or not to plead guilty?

17          THE DEFENDANT:  Yes, your Honor.

18          THE COURT:  Now, have you ever had any problems with

19     substance abuse yourself, either drugs or alcohol?

20          THE DEFENDANT:  Yes, your Honor.

21          THE COURT:  Tell me about it.

22          THE DEFENDANT:  I have abused a number of drugs since

23     the age of 16.

24          THE COURT:  What drugs?

25          THE DEFENDANT:  Alcohol, marijuana, cocaine, various

1    hallucinogens.

2              THE COURT:  Like?

3              THE DEFENDANT:  LSD, Ketamine, psychedelic mushrooms,

4    2C-I, 2C-B.

5              THE COURT:  When was the last time you used drugs?

6              THE DEFENDANT:  May of '08.

7              THE COURT:  Is that when you were arrested?

8              THE DEFENDANT:  Yes, sir.

9              THE COURT:  Now, the effects of having used drugs over

10   an extended period of time, and this array of drugs, is it

11   interfering with your ability now to make your own decision

12   about whether or not to plead guilty here?

13             THE DEFENDANT:  No, your Honor.

14             THE COURT:  Do you think you are clear-eyed enough and

15   clear-minded enough to make that kind of determination?

16             THE DEFENDANT:  Yes, your Honor.

17             THE COURT:  Are you taking any prescription drugs?

18             THE DEFENDANT:  I am.

19             THE COURT:  What?

20             THE DEFENDANT:  Benadryl and Zyrtec.

21             THE COURT:  And are those drugs that affect your mood?

22             THE DEFENDANT:  No, your Honor; they are allergy

23   medicines.

24             THE COURT:  Okay.  Do they in any way affect your

25   ability to make a clear-eyed judgment about pleading guilty

1    here?

2            THE DEFENDANT:  No, your Honor.

3            THE COURT:  Are you seeing a physician for any kind of

4    physical problems?

5            THE DEFENDANT:  No, your Honor.

6            THE COURT:  Have you ever had occasion to consult with

7    a mental health professional, like a psychiatrist or a

8    psychologist, or a psychiatric social worker, or anyone like

9    that?

10            THE DEFENDANT:  I have.

11            THE COURT:  Can you tell me, broadly, what the

12   complaints are when you consulted with those mental health

13   professionals?

14            THE DEFENDANT:  It was for difficulty coping with my

15   situation.

16            THE COURT:  Well, what time period are we talking

17   about?

18            THE DEFENDANT:  Last year, around August.

19            THE COURT:  After you had been arrested?

20            THE DEFENDANT:  Yes.

21            THE COURT:  So, when I say "complaining," you were

22   presenting to the physicians or the mental health professionals

23   concerns about your condition as someone who is under

24   indictment?

25            THE DEFENDANT:  Yes, your Honor.

1          THE COURT:  Who were these people?  Were they

2    psychiatrists, or psychologists or psychiatric social workers?

3          THE DEFENDANT:  I can't be 100 percent certain what

4    they were.

5          THE COURT:  Were they people that you consulted in the

6    prison system or independently?

7          THE DEFENDANT:  In the prison system.

8          THE COURT:  Now, having consulted with a mental health

9    professional relatively closely to the time period of coming

10   here to plead guilty, is that affecting your ability to make a

11   clear-eyed judgment?  Do you think it has any affect on your

12   ability to make a clear-eyed judgment?

13         THE DEFENDANT:  No, your Honor.

14         THE COURT:  Are you satisfied that you know what you

15   are doing, and what you are doing is voluntary?

16         THE DEFENDANT:  Yes, your Honor.

17         THE COURT:  You understand you do not have to plead

18   guilty at all, that, under our system of justice, a person who

19   is accused of a crime is presumed innocent unless and until

20   that person is proved guilty beyond a reasonable doubt?

21         What that means is that the Government bears the

22   entire burden of proving each essential element of the offense

23   against you.  You do not have to do anything at all.  You can

24   look them straight in the eye and say, "Prove it," and unless

25   and until they can do that beyond a reasonable doubt, you are

1    presumed and remain innocent, except if you plead guilty.

2         Do you understand that, by pleading guilty, you are

3    giving up those valuable constitutional rights?

4         THE DEFENDANT:  Yes, I understand.

5         THE COURT:  And you understand, as well, you can

6    challenge the Government's case; that is to say, you could have

7    Mr. Weinberg cross-examine the Government's witnesses, you

8    could have him bring in witnesses on your behalf?  And if some

9    of those witnesses would not come in here voluntarily, I would

10   give him court process to force them to come in here.  And you

11   would have the right to take the witness stand yourself and

12   tell your side of the story, or you could choose not to.  And

13   if you chose not to, I would tell the jury, and, of course, if

14   it were tried to me, I would observe this principal myself,

15   that we cannot hold that against you.

16        That is another valuable constitutional right that you

17   have, the right to remain silent in the face of criminal

18   accusation.

19        Now, by pleading guilty, you are giving up all of

20   those rights.  Do you understand that.

21        THE DEFENDANT:  Yes, your Honor.

22        THE COURT:  Now, I am told that you are pleading

23   guilty pursuant to a plea agreement that was entered into with

24   the United States Attorney's Office in the District of New

25   Jersey.  Is that correct?

1          THE DEFENDANT:  That's correct, your Honor.

2          THE COURT:  Apart from that plea agreement, did

3    anybody promise you anything to get you to plead guilty?

4          THE DEFENDANT:  No, your Honor.

5          THE COURT:  Did anybody threaten you in any way to get

6    you to plead guilty?

7          THE DEFENDANT:  No, your Honor.

8          THE COURT:  You understand -- or at least I understand

9    from this plea agreement that the parties have determined a

10   kind of range of sentences that they consider to be reasonable

11   here, and they have made some calculations about the Sentencing

12   Guidelines.  But you understand I am not bound by those?

13         THE DEFENDANT:  Yes, I understand, your Honor.

14         THE COURT:  I can make my own determination with

15   respect to those.  Do you understand that?

16         THE DEFENDANT:  Yes, your Honor.

17         THE COURT:  And if you do not like the sentence I

18   impose, you do not get to withdraw that sentence; you are stuck

19   with it.  Do you understand that?

20         THE DEFENDANT:  Understood, your Honor.

21         THE COURT:  Although, you do have, under certain

22   circumstances, according to this plea agreement, rights of

23   appeal.  Do you understand that?

24         THE DEFENDANT:  I do, your Honor.

25         THE COURT:  Now, I mentioned that I was going to be

1      dealing with the question of the Sentencing Guidelines.  Those

2      are a series of directives to me that tell me what the proper

3      sentence should be for someone with your background who is

4      engaged in these kinds of crimes, and they require me to

5      consider various aspects of the crime itself and various

6      aspects about your background.  And I will make my own

7      determinations, just as the parties already have made their own

8      determinations, and my determinations may be different from

9      what the parties determine.

10              Do you understand that?

11              THE DEFENDANT:  I understand, your Honor.

12              THE COURT:  And you understand the Guidelines are

13     advisory, they are not mandatory, and I will consider the other

14     factors that are imposed by statute that affect the question of

15     what the proper sentence would be, and, ultimately, I will

16     impose what I consider to be the proper sentence.

17              Now, we had a conversation earlier about Judge Saris's

18     cases, and I indicated that I would give anything that she does

19     respectful consideration, but I am not bound by that.  Do you

20     understand that?

21              THE DEFENDANT:  I understand, your Honor.

22              THE COURT:  Do you have any questions of me regarding

23     your plea agreement?

24              THE DEFENDANT:  I do not, your Honor.

25              THE COURT:  You have had an adequate opportunity, I

1        take it, to discuss it fully with Mr. Weinberg?

2             THE DEFENDANT:  I have, your Honor.

3             THE COURT:  Now, one aspect that I raised earlier is

4        this question of Waiver of Appeal and Collateral Attack, and,

5        as I indicated, it has been my experience that very few

6        defendants are in a position voluntarily and knowingly to waive

7        appeal, and it has been my practice not to accept such waivers,

8        except in unusual circumstances, of which this appears to be

9        one, of someone who has substantial experience and substantial

10       opportunity to discuss with his counsel what it means to give

11       up the right of appeal.  Now, have you had that opportunity

12       with Mr. Weinberg?

13            THE DEFENDANT:  I have, your Honor.

14            THE COURT:  Okay.  Now, under this Waiver of Appeal

15       and Collateral Attack -- and you understand that "collateral

16       attack" is a mechanism after the final judgment is entered,

17       after the opportunity for direct appeal has ended, to make a

18       challenge to the judgment?  You understand that?

19            THE DEFENDANT:  I do, your Honor.

20            THE COURT:  And under this Waiver of Appeal and

21       Collateral Attack, you say that you are giving up your right to

22       challenge the sentence that's imposed by me so long as the

23       sentence does not exceed 300 months, which is 25 years.  Do you

24       understand that?

25            THE DEFENDANT:  That's correct.

1          THE COURT:  And the Government is taking a similar

2     tact; that is to say, the United States Attorney's Office for

3     the District of New Jersey -- and this is binding on the

4     Department of Justice -- is taking the position that they give

5     up the right to appeal if the sentence of imprisonment is at

6     least 204 months or 17 years in prison.

7          Do you understand that that is the range that the

8     parties have entered into here?

9          THE DEFENDANT:  Yes, your Honor.

10          THE COURT:  All right.

11          MR. WEINBERG:  If your Honor please, I don't know if

12     the amendment to the appeal waiver reached your Honor, but the

13     waiver is to a cumulative 300 months.

14          THE COURT:  Yes, and I should have developed that more

15     fully.

16          This is based on the assumption that, together, the

17     sentences that Judge Saris and I impose do not either exceed

18     300 months or are not less than 204 months.

19          Do you understand that?

20          THE DEFENDANT:  Yes, your Honor.

21          THE COURT:  So, one of the things that I suspect I

22     will be asked to do is to impose what is called a concurrent

23     sentence, concurrent, at least in part, to the sentence that is

24     imposed by Judge Saris.  Do you understand that?

25          THE DEFENDANT:  I do, your Honor.

1          THE COURT:  Okay.  Now, with respect to this waiver of

2     the right to appeal, the parties, both of the parties, have

3     reserved their right to appeal determinations of things like

4     the Criminal History Category that I determine here.  And if,

5     as we anticipate, my sentencing is after Judge Saris's, I will

6     be imposing a sentence in which you have a criminal history

7     created by your sentences by Judge Saris.

8          Do you understand that?

9          THE DEFENDANT:  I do.

10          THE COURT:  Now, are there any other aspects of the

11     plea agreement that the parties want me to inquire of

12     specifically?

13          MR. HEYMANN:  No, your Honor.

14          THE COURT:  Now, the crime that you are pleading

15     guilty to here, or crimes, I should say, that you are pleading

16     guilty to here, Mr. Gonzalez, are two:  One is a conspiracy,

17     and it is a conspiracy to violate three separate laws, any one

18     of which would support the conspiracy.  It is an agreement

19     between you and at least one other person to enter into an

20     agreement to commit offenses against the United States.

21          And, more specifically, the charging language says

22     that this was an agreement to use by means of interstate

23     communications knowingly and intentionally to access computers

24     in interstate commerce without authorization and obtain

25     information from those computers, namely credit and debit card

1    numbers and corresponding card data for the purpose of some

2    sort of commercial advantage or private financial gain, and

3    that is, if that conspiracy is entered into, a violation of the

4    Federal criminal law.

5           There is a second potential objective of the

6    conspiracy, and that is to knowingly and with intent to defraud

7    access computers in interstate commerce and exceed authorized

8    access to such computers, and by such means of conduct to

9    further fraud and obtain things of value, namely credit card

10   and debit card numbers and corresponding card data.  That is

11   also in violation of federal law.

12          And the final object of the conspiracy, broadly

13   stated, is knowingly to cause the transmission of programs,

14   information, codes and commands, and, as a result of that,

15   intentionally cause damage without authorization to computers

16   that are in interstate commerce, another violation of federal

17   law.

18          You understand that those are the three branches of

19   the conspiracy that the Government has charged you with?

20          THE DEFENDANT:  Yes.

21          THE COURT:  Now, have you discussed fully with

22   Mr. Weinberg what the elements of this offense are, what it is

23   that the Government has to prove?

24          THE DEFENDANT:  I have, your Honor.

25          THE COURT:  Do you have any questions of me of what

1    the Government has to prove?

2         THE DEFENDANT:  Not at this time.

3         THE COURT:  All right.  Now, the second charge is a

4    conspiracy to engage in what is called "Wire Fraud," and that

5    is Count 2 of the indictment.

6         And, here, what is alleged is that you entered into an

7    agreement with one or more other persons to knowingly and

8    intentionally devise a scheme and artifice to defraud certain

9    corporate victims who are identified in this indictment and

10   certain financial institutions that issued credit and debit

11   cards to those customers, and the purpose of that scheme was to

12   obtain money and property by means of materially false

13   misrepresentations or fraudulent misrepresentations or

14   promises, and that, for purposes of executing that scheme, you

15   would make use of the means of wire communication in interstate

16   and foreign commerce.

17        Do you understand that that is what the Government is

18   charging you with in Count 2?

19        THE DEFENDANT:  Yes, your Honor.

20        THE COURT:  And, again, have you discussed fully with

21   Mr. Weinberg what the defenses are to that and what kind of

22   initiatives you could pursue to defend against these charges?

23        THE DEFENDANT:  I have, your Honor.

24        THE COURT:  And have you discussed with him the

25   elements of the offenses --

1          THE DEFENDANT:  Yes, your Honor.

2          THE COURT:  -- of this offense?  Is there anything

3     that you have to ask me about that offense?

4          THE DEFENDANT:  I do not.

5          THE COURT:  All right.  Now, you earlier said, "Not at

6     this time."  This is the time to ask.  Do you understand that,

7     Mr. Gonzalez?

8          THE DEFENDANT:  I do.

9          THE COURT:  All right.  Now, I would like to know,

10    either Mr. Heymann or Mr. Cabell, what the maximum penalties

11    could be with respect to these counts.

12         MR. HEYMANN:  Your Honor, with respect to Count 1, the

13    18 U.S.C. Section 371 conspiracy, the maximum penalty is five

14    years' incarceration, along with the greatest of a $250,000

15    fine, twice the gross amount of his pecuniary gain, or twice

16    the gross amount of the pecuniary loss sustained by the

17    victims.

18         THE COURT:  At this point, does the Government have a

19    sense of what that gain or loss would be?

20         MR. HEYMANN:  The loss would be -- the loss -- there

21    is a stipulated number in here at a minimum of $20 million, and

22    we would expect that loss to be higher than that.  So, it would

23    be twice -- a minimum of $20 million is the loss.

24         While the plea agreement itself doesn't set this

25    forth, there would be also with respect to Count 1 a period of

1    supervised release of three years.

2          With respect to Count 2, the 18 U.S.C. Section 1349

3    wire fraud conspiracy charge, there would be a maximum prison

4    sentence of 30 years.  I know it is generally 20 years in

5    proceedings before the Court, but it's triggered by the victim

6    being a financial institution.  So, it's a maximum of 30 years'

7    imprisonment and, again, the greatest, in terms of fine, of in

8    this case $1,000,000, twice the gross amount of any pecuniary

9    gain that any person derived from the offense or twice the

10   gross amount of any pecuniary loss sustained by any victims of

11   the offense.

12         Here, the maximum period of supervised release would

13   be five years because of the length of the sentence.  There is

14   also in this case -- notice has been given under 18 U.S.C.

15   Section 3147, which pertains to the offense having been

16   committed while he was on pretrial release.

17         As a result of that, there is a mandatory consecutive

18   sentence to be imposed, but there is no minimum to what that

19   mandatory sentence is.  It has a maximum of 10 years'

20   imprisonment, but there is no minimum associated.  It simply

21   has to be consecutive to the other sentences.

22         THE COURT:  All right.  Now, with respect to Judge

23   Saris's case, then, assuming that, as you must, I will be

24   sentencing after Judge Saris here, I must impose a consecutive

25   sentence of some duration to whatever sentence she imposes.

1          MR. HEYMANN:  Your Honor, I am not clear on that at

2     all.

3          The 18 U.S.C. Section 3147 notice was not given in

4     Judge Saris's case, so there is no -- in that regard, the plea

5     agreements aren't in sync or aren't parallel.  And this, as I

6     understand it, is a mandate that it be consecutive to the

7     charges in the indictment itself, not consecutive to all

8     earlier sentences imposed in an earlier proceeding.

9          THE COURT:  So, it stands alone within this

10    indictment?

11         MR. HEYMANN:  Yes, your Honor.

12         THE COURT:  All right.

13         Mr. Weinberg.

14         MR. WEINBERG:  And we would contend, your Honor, that

15    although a sentence under that statute needs to be on and

16    after, that the aggregate of the sentence for the underlying

17    offense, in combination with any sentence your Honor in your

18    discretion imposed under 3147, could be a sentence that would

19    not exceed 17 years, and, therefore, if Judge Saris's sentence

20    was 17 years, the sentence would be fully concurrent.

21         THE COURT:  I see.  All right.

22         Well, do you understand what the range of sentences

23    could be in terms of maximums here, Mr. Gonzalez?  Do you

24    understand that that is what you are pleading to?

25         THE DEFENDANT:  I do.

1          THE COURT:  So, you face a considerable amount of time

2     in jail as a result of your plea in this case.  Do you

3     understand that?

4          THE DEFENDANT:  I do, your Honor.

5          THE COURT:  And it is going to affect other aspects of

6     your life.  It may mean that you cannot vote, you cannot serve

7     on a jury, you cannot hold a public office.  It may affect your

8     ability to get jobs afterwards.  All aspects of your life are

9     going to be affected by your plea of guilty in this case.

10         Do you understand that?

11         THE DEFENDANT:  I do, your Honor.

12         THE COURT:  Are you still prepared to plead guilty?

13         THE DEFENDANT:  Yes, your Honor.

14         THE COURT:  Now, one of the things I have to do is

15    satisfy myself that there is sufficient evidence from which a

16    finder of fact could find you guilty of the offenses charged.

17    So, I am going to ask the Government to tell me, briefly, what

18    the evidence would be in this case if it went to trial.

19         I want you to listen very carefully, because, when

20    they are through, I am going to turn to you and say, "Is that

21    what happened?"

22         All right.  Mr. Heymann.

23         MR. HEYMANN:  Your Honor, with respect to this plea

24    agreement, there is a set of facts which I will now read for

25    the purpose of the record and for the purpose of this

1    proceeding that the parties have agreed to stipulate to

2    supporting the charges in this case.

3            THE COURT:  All right.

4            MR. HEYMANN:  Between at least as early as October

5    2006 and May 2008, Defendant Gonzalez and the individual

6    identified in the indictment as "PT" --

7            THE COURT:  Because you are reading, Mr. Heymann, you

8    might want to slow down a little bit.

9            MR. HEYMANN:  Okay.  I apologize.

10           THE COURT:  We all tend to read more quickly, I think.

11           MR. HEYMANN:  To start again:  Between at least as

12   early as October 2006 and May 2008, Defendant Gonzalez and the

13   individual identified in the indictment as "PT," hereinafter

14   "PT," identified potential corporate victims by reviewing lists

15   of Fortune 500 companies.

16           During that time, Defendant Gonzalez and PT traveled

17   or had others travel on their behalf to retail stores to

18   explore the types of point-of-sale systems used in those stores

19   and to understand their potential vulnerabilities.  Defendant

20   Gonzalez leased or otherwise controlled the Ukrainian server,

21   the Latvian server and the ESTHost server defined in the

22   indictment.

23           Defendant Gonzalez gave PT access to certain hacking

24   platforms and instructed PT to encrypt the hacking platforms

25   and disabled logging functions on them in order to prevent the

1     hacking activities that would take place on those servers from

2     being discovered.  Defendant Gonzalez gave access to the

3     hacking platforms that he controlled to Hacker 1 and Hacker 2,

4     identified in the indictment, among others, knowing that Hacker

5     1 and Hacker 2 would use those servers to store malware and

6     launch attacks against corporate victims.

7          Defendant Gonzalez controlled the "S" Directory of the

8     Ukrainian server.  Malware used against Heartland, Company A

9     and Company B matched malware found in the "S" Directory of the

10    Ukrainian server.  Defendant Gonzalez instructed PT to modify

11    malware used in the attacks on Heartland and Company A to

12    connect to IP addresses that Gonzalez provided him.

13         Defendant Gonzalez and PT tested software by running

14    multiple antivirus programs in an attempt to ascertain if the

15    program detected the malware.

16         Defendant Gonzalez knew that Hacker 1 and Hacker 2

17    gained unauthorized access to Hannaford Brothers through a

18    related company's servers.  Defendant Gonzalez engaged in

19    instant messaging with Hacker 1 and Hacker 2 before, during and

20    after hacks into corporate victims, including a discussion in

21    which one of the co-conspirators stated, quote, Planning my

22    second phase against Hannaford, closed quote, and another in

23    which one of the co-conspirators stated, quote, "core still

24    hasn't downloaded that" -- there is a substitution in brackets

25    here -- [Company B] sh-t, period, closed quote.

1          On or about November 6, 2007, Defendant Gonzalez

2     transferred a computer file to the Ukrainian server named

3     sqlz.txt that contained information taken without authorization

4     from Company A's computer network.  Defendant Gonzalez was

5     aware that Hacker 1 and Hacker 2 were attempting to access

6     Heartland payment systems between in or about December 2000 and

7     in or about January 2008.

8          Between in or about August 2007 and in or about

9     November 2007, Hacker 1 and Hacker 2, with Gonzalez's

10    knowledge, gained unauthorized access to 7-Eleven, Inc's

11    servers through 7-Eleven's public-facing internet site, and

12    then leveraged that access into servers supporting ATM

13    terminals located in 7-Eleven stores.  This access caused

14    7-Eleven, Inc. on or about November 9, 2007 to disable its

15    public-facing internet site to disrupt the unauthorized access.

16         In or about January 2008, Defendant Gonzalez sent PT

17    the SQL injection string that PT used to gain unauthorized

18    access to Company B's servers.  On or about April 22, 2008,

19    Defendant Gonzalez modified a file on the Ukrainian server that

20    contained computer log data stolen from Company B's computer

21    network.

22         It was foreseeable to Defendant Gonzalez that Hacker 1

23    and Hacker 2 would us malware together and steal credit and

24    debit card numbers and associated credit card data from the

25    corporate victims identified in the indictment, including tens

1    of millions of credit and debit card numbers.

2          It was foreseeable to Defendant Gonzalez that the

3    theft of credit and debit card numbers and associated card data

4    in the possession of the corporate victims identified in the

5    indictment would affect more than 250 financial institutions.

6          It was foreseeable to Defendant Gonzalez that the

7    losses resulting from unauthorized access into the servers of

8    the corporate victims identified in the indictment would exceed

9    $20 million.

10          Defendant Gonzalez conspired to gain unauthorized

11    access to corporate victims identified in the indictment while

12    on pretrial release from the District of New Jersey.

13          THE COURT:  All right.

14          Now, what Mr. Heymann was reading from was called

15    Schedule A to your Plea Agreement.  You have read that before;

16    is that right?

17          THE DEFENDANT:  Yes, I have.

18          THE COURT:  And you heard what Mr. Heymann read here

19    today.  Do you dispute any of that?

20          THE DEFENDANT:  I do not.

21          THE COURT:  Is that what happened?

22          THE DEFENDANT:  That's true.

23          THE COURT:  Okay.  Mr. Heymann, do you know of any

24    reason I should not accept a plea?

25          MR. HEYMANN:  No, I do not, your Honor.

1          THE COURT:  Mr. Weinberg?

2          MR. WEINBERG:  No, your Honor.

3          THE COURT:  All right.  I am going to ask Mr. Lovett

4     to inquire of Mr. Gonzalez.

5          THE CLERK:  Mr. Gonzalez, would you please rise.

6                    (Defendant stands)

7          THE CLERK:  On Criminal No. 09-10382, Count 1 of the

8     indictment charges you with Conspiracy to Defraud the United

9     States, in violation of Title 18, United States Code 371.

10         Count 2 of the indictment charges you with Conspiracy

11    to Commit Wire Fraud, in violation of Title 18, United States

12    Code 1349.

13         You have previously pled not guilty.  Do you now wish

14    to change your plea?

15         THE DEFENDANT:  I do.

16         THE CLERK:  What say you as to Count 1, guilty or not

17    guilty?

18         THE DEFENDANT:  Guilty.

19         THE CLERK:  What say you as to Count 2, guilty or not

20    guilty?

21         THE DEFENDANT:  Guilty.

22         THE COURT:  You may be seated.

23         I believe I am obligated, under the Victim Act, to

24    inquire whether or not any victim wishes to be heard before I

25    make a determination here.

1          Is there any victim who wishes to be heard before I

2     make a determination whether to accept the plea?

3                    (No response)

4          THE COURT:  And seeing no response to that, I will

5     accept the plea.

6          I find it to be knowing and voluntary on your part,

7     Mr. Gonzalez, and it is supported by substantial evidence from

8     which a finder of fact could find you guilty of the offenses

9     charged.  You are now adjudged guilty of those offenses.

10          What is going to happen now, as you probably know from

11     the proceedings before Judge Saris, is that the Probation

12     Office of the Court will prepare a Presentence Report.  It is a

13     matter that I rely on very heavily in making my own

14     determination.  Both you and Mr. Weinberg will have a chance to

15     work with the Probation Office, bring to their attention things

16     that you think they should know and also answer questions about

17     things that they think I should know.

18          You will get a chance to see the Presentence Report in

19     its draft form.  You can ask the Probation Office to make

20     changes or corrections.  If they do not make the changes or

21     corrections to your satisfaction, you can bring the matter up

22     to me at the time of sentencing.  And at the time of

23     sentencing, both you and Mr. Weinberg will have an opportunity

24     to address me orally in open court about the factors that I

25     should have in mind before I do impose a sentence in this case.

1          We have set, preliminarily, the sentencing for March

2     19th, with the understanding that that date may change in

3     relation to the development of additional materials having to

4     do with the question of sentencing.

5          Do you have any questions of me, Mr. Gonzalez?

6          THE DEFENDANT:  No, your Honor.

7          THE COURT:  Is there anything else that we need to

8     take up at this point?

9          MR. HEYMANN:  No, your Honor.

10          THE COURT:  All right.

11          MR. WEINBERG:  No, your Honor.

12          THE COURT:  Then, we will be in recess.  Thank you.

13          THE CLERK:  All rise.

14     (The Honorable Court exited the courtroom at 2:50 p.m.)

15     (WHEREUPON, the proceedings adjourned at 2:50 p.m.).

16

17

18

19

20

21

22

23

24

25

1                      C E R T I F I C A T E

2

3

4            I, Brenda K. Hancock, RMR, CRR and Official Reporter

5     of the United States District Court, do hereby certify that the

6     foregoing transcript constitutes, to the best of my skill and

7     ability, a true and accurate transcription of my stenotype

8     notes taken in the matter of United States v. Albert Gonzalez,

9     No. 1:09-cr-10382-DPW-1.

10

11

12

13

14

15     Date:March 23, 2010            /s/ *Brenda K. Hancock*

16                                    Brenda K. Hancock, RMR, CRR

17                                    Official Court Reporter

18

19

20

21

22

23

24

25